UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION** at **LEXINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal No. 17-cr-68-JMH |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| ) | |
| JASON WHITIS, et al., ) | |
| ) | |
| Defendants. ) | |

** ** ** ** **

## I. INTRODUCTION

This matter is before the Court upon Defendant Joshua Kelley Pyles's Motion to Suppress [DE 23], which co-Defendants Jason Whitis and Robbie Neal Whitis have joined [DE 25, 28, 32]. Defendants seek to exclude evidence of firearms and methamphetamine discovered by Kentucky State Police during a traffic stop in April 2017. The United States submitted a Response [DE 27], and Defendants filed their Reply [DE 33], making the Motion ripe for the Court's review. On July 19, 2017, the Court held an evidentiary hearing, during which the United States presented testimony from KSP Trooper Brad Ramsey whom Defendants cross-examined. Defendants offered no evidence. At the close of the hearing, the Court orally denied the Motion. This Memorandum Opinion and Order supplements the Court's oral ruling.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On April 26, 2017, Trooper Ramsey was conducting radar surveillance of eastbound traffic on I-64 in Fayette County. He had parked his unmarked car in the median facing west. At about 3:15 p.m., he observed a 1999 gold Mazda 626 traveling east at 63 miles per hour in a zone with a speed limit of 70 miles per hour, much slower than other vehicles. As the vehicle passed him, he saw two men sitting in front. They seemed tense and avoided eye contact with Trooper Ramsey. He also spotted a third person in the back seat, but did not observe whether that individual was male or female.

Trooper Ramsey drove onto I-64 and followed the Mazda for a few miles, running its license plate number through the Law Enforcement Information Network of Kentucky ("LINK")/NCIC database. The database revealed that the vehicle was registered to a woman named Angela Burdine, who had an outstanding arrest warrant for failure to appear and failure to produce an insurance card in Kentucky. He initiated an investigatory traffic stop near the convergence of I-64 and I-75 in Lexington.

Trooper Ramsey approached the passenger side of the vehicle, rapping on the rear passenger-side window as he did so. He observed Pyles, who was sitting in the rear passenger seat, attempting to hide something under a pile of clothes in the seat

2

next to him.   Pyles rolled down the window in response to the knock, whereupon Trooper Ramsey detected the smell of marijuana. He secured the Mazda and called for backup.

Next, Trooper Ramsey asked all three men for identification. Robbie Neal Whitis, who was driving the vehicle, complied with the request.   When Trooper Ramsey asked the other occupants for identification, he noticed that Robbie Whitis began moving around in the front seat and concealing his hands in his shirtsleeves. Trooper Ramsey ordered Robbie Whitis to place his hands on the steering wheel, and again he complied.   Pyles then provided identification.   Jason Whitis stated that he did not have any identification on his person, and proceeded to give Trooper Ramsey a Social Security number and date of birth that proved to be false. He also confirmed that the vehicle belonged to his girlfriend, Angela Burdine.

Shortly thereafter, Troopers Brian Smith and Joshua Giles arrived on the scene.   Trooper Ramsey removed Pyles from the vehicle, while Trooper Smith dealt with Jason Whitis.   Trooper Giles asked Robbie Whitis to step out of the vehicle.   When he complied, Trooper Giles noticed that he had a gun on his person and disarmed him.   The troopers searched the three men and found nothing, then searched the vehicle.   They discovered a Wal-Mart bag under the front seat that contained fresh marijuana.   Under a pile of clothes in the back seat, they found a weapon and more

marijuana.  There was also a small bag in the back seat that held burnt roaches and marijuana cigarettes.  The trunk contained a Nike shoe box with a grocery sack inside.  The troopers found a small, clear plastic bag of methamphetamine in the grocery sack.

On May 25, 2017, a federal grand jury returned an Indictment against all three Defendants for conspiracy to distribute methamphetamine.  [DE 9].  Pyles and Robbie Neal Whitis were also indicted on charges of possession of a firearm in furtherance of drug trafficking.  [*Id.*].  The instant Motion to Suppress followed shortly thereafter.  In their Motion, Defendants argue that Trooper Ramsey did not have reasonable suspicion to initiate a traffic stop and, thus, all evidence discovered as a result of that search should be excluded as fruit of the poisonous tree.

### III. ANALYSIS

#### A.  *Investigatory Stops*

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest."  *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)).  "Because the balance between the public interest and the individual's right to personal security tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe

4

that criminal activity may be afoot." *Id.* (internal citations and quotations omitted); *see also United States v. Cortez*, 449 U.S. 411, 417 (1981) ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.").

To "make reasonable-suspicion determinations, … [courts] must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273 (quoting *Cortez*, 449 U.S. at 417). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* (quoting *Cortez*, 449 U.S. at 417). This standard is "less demanding than that for probable cause," and "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). However, an officer "must be able to articulate something more than an 'inchoate and unparticularized suspicion or "hunch"'" to justify an investigatory stop." *Id.* (quoting *Terry*, 392 U.S. at 27).

The United States Court of Appeals for the Sixth Circuit has held that a police officer's use of license plate scanning technology is not a search within the meaning of the Fourth Amendment. *United States v. Ellison*, 462 F.3d 557, 563 (6th Cir.

2006); *see also United States v. Diaz-Castaneda*, 494 F.3d 1146, 1150-51 (9th Cir. 2007) (holding the same). Moreover, such a scan may reveal information that gives rise to reasonable suspicion justifying an investigatory stop. *United States v. McBrown*, 149 F.3d 1176, 1998 WL 413981, at *10 (5th Cir. 1998) ("Officer Harris had reasonable suspicion to stop the car because his computer showed that the driver had outstanding arrest warrants."); *United States v. Chartier*, 772 F.3d 539, 543 (8th Cir. 2014) (reaching the same conclusion where a license plate scan revealed that the registered owner has a suspended license).

An officer may generally "'assume that the driver of a vehicle is the registered owner, unless they have evidence to the contrary.'" *United States v. Montalvo-Rangel*, 2010 WL 1417745, at *3 (W.D. Tex. Apr. 5, 2010) (quoting *People v. Khoshaba*, 2006 WL 932408, at *2 (Mich. App. 2006)); *see also State v. Howard*, 766 N.E.2d 179, 183 (Ct. App. Ohio 2001) ("Whenever an officer runs a check of a vehicle's license plate and learns that the owner's license is suspended, the officer may rationally infer that the owner of the vehicle is likely to be driving the vehicle, giving rise to a reasonable, articulable suspicion to justify the stop."); *State v. Neil*, 207 P.3d 128, 128 (Mont. 2009) (applying the same standard); *Armfield v. State*, 918 N.E.2d 316, 321-22 (Ind. 2009) (articulating the same principles in the form of a two-part test).

Courts have declined to "require officers to match the physical description of the registered owner from the license plate check to the driver of the vehicle before initiating a *Terry* stop" because such a rule would "put[] the onus on the officer to maneuver himself into a position to clearly observe the driver in the midst of traffic." *Armfield*, 918 N.E.2d at 321-22(concluding that an officer had reasonable suspicion to initiate an investigatory stop where a license plate scan revealed that the registered owner had a suspended license and the officer was unable to see the driver through dark tinted windows); *see also United States v. Chartier* (8th Cir. 2014) (finding that an investigatory stop based on a license plate check was supported by reasonable suspicion where the officer was driving in dark and snowy conditions, could only see the back of the driver's head, and was unable to pull ahead on the two-lane road).

However, "if the officer sees the driver and can tell that his or her physical description does not match the description given of the owner of the vehicle, the inference that the driver of the vehicle is its owner is no longer rational, and the officer may lack reasonable suspicion to stop the vehicle." *Howard*, 766 N.E.2d at 183; *see also Neil*, 207 P.3d at 128 (expressing the same principle); *Armfield*, 918 N.E.2d at 321 (same). "Thus, for example, if the officer knows that the owner of a vehicle has a revoked license and further, that the owner is a 22-year-old male,

7

and the officer observes that the person driving the vehicle is a 50-or-60-year old woman, any reasonable suspicion of criminal activity evaporates." *State v. Pike*, 551 N.W.2d 919, 922 (Minn. 1996); *see also People v. Jones*, 678 N.W.2d 627, 631 n. 4 (Ct. App. Mich. 2004) (explaining that, "if the registered owner was a male and the driver was a female, the officer would not have reasonable grounds to assume that the driver was the owner").

Defendants point out that they did not commit any traffic infractions, and thus, the only basis for the traffic stop was the possible presence of Angela Burdine in the vehicle. Defendants then contend that Trooper Ramsey did not have reasonable suspicion to conduct such a stop because he could easily see that there were three males in the vehicle who clearly did not match the description of Angela Burdine, who is female.

As noted above, Trooper Ramsey testified that the Mazda first caught his attention because it was traveling at a relatively slow speed and its occupants seemed tense as they passed his car. When he ran the license plate, he discovered that the registered owner, Angela Burdine, had an outstanding warrant for her arrest. Trooper Ramsey was entitled to assume that Angela Burdine was one of the occupants unless he was aware of facts that made such an assumption unreasonable. He could tell that there were two men sitting in the front seats of the car, but he did not make any observations about the identity of the person sitting in the back seat. As a

result, when Trooper Ramsey initiated the stop, he did not know that the third occupant was male and, thus, was not aware of facts that made it unreasonable for him to assume that Angela Burdine was in the car.[1]   In sum, the unusual behavior of the occupants, combined with the presumption that one of the occupants was subject to an outstanding arrest warrant, gave Trooper Ramsey reasonable suspicion to initiate an investigatory stop of the vehicle.

**B.    The "Fruit of the Poisonous Tree" Doctrine**

The "fruit of the poisonous tree" doctrine contemplates the exclusion of all evidence obtained "as a direct result of an illegal search or seizure," as well as "evidence later discovered and found to be derivative of an illegality." *Segura v. United States*, 468 U.S. 796, 804 (1984) (citing *Wong Sun v. United States*, 371 U.S. 471, 484 (1963)).   This rule is subject to three exceptions: (1) the government learns of the evidence from an independent source; (2) the connection between the evidence and the unlawful search is "so attenuated as to dissipate the taint;" or (3) the evidence would inevitably have been discovered.   *See Wong Sun*, 371 U.S. at 487-88; *Nix v. Whiteside*, 467 U.S. 431, 444 (1984).

Defendants do not take issue with any other aspect of their encounter with Trooper Ramsey.   There is no suggestion that the

---

[1] Trooper Ramsey testified too that his experience taught him that another person could possibly have been hiding in the backseat of the car.

subsequent search of their persons or the vehicle was illegal. Instead, they simply assert that the evidence discovered in the car must be excluded under the "fruit of the poisonous tree" doctrine because it was discovered as a direct result of an unjustifiable traffic stop. This argument fails because the Court has already found that Trooper Ramsey's investigatory stop was supported by reasonable suspicion, for the reasons explained above. Thus, the evidence discovered in the vehicle is not fruit of the poisonous tree and need not be excluded. The Motion to Suppress is denied.

### IV. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** that the Motion to Suppress [DE 23] be, and hereby is, **DENIED.**

This the 20th day of July, 2017.



Signed By:

_Joseph M. Hood_

Senior U.S. District Judge