UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION** at **LEXINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal No. 17-cr-68-JMH |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| ) | |
| JASON WHITIS, et al., ) | |
| ) | |
| Defendants. ) | |

\*\*    \*\*    \*\*    \*\*    \*\*

## I. INTRODUCTION

This matter is before the Court upon Defendant Joshua Kelley Pyles's Motion to Alter or Amend [DE 38] the Court's Memorandum Opinion and Order of July 20, 2017 [DE 35], wherein it rejected his efforts to suppress evidence seized by Kentucky State Police during a traffic stop in April 2016. The Court permitted his co-Defendants, Robbie Neal Whitis and Jason Whitis, to join in his Motion [DE 41, 44, 47]. The United States having filed a Response in Opposition [DE 50], this matter is now ripe for the Court's review. For the reasons stated in the Memorandum Opinion and Order of July 20, 2017, and reiterated today, the Motion to Alter or Amend is **DENIED**.

"The decision to reopen a suppression hearing is left to the sound discretion of the court." *United States v. White*, 455 F. App'x 647, 650 (6th Cir. 2012) (finding no merit in the defendant's

1

argument that the trial court did not "closely scrutinize" evidence produced at trial, even though it tended to disprove a police officer's testimony at a prior suppression hearing). "Generally, a court should be reluctant to reopen a case, and that principle has been applied to suppression hearings." *Id.* When making such a request, the moving party must first provide "a reasonable explanation for failing to present the evidence initially." *Id.* "Then the timeliness of the motion, the character of the testimony, the effect of granting the motion, and whether the opposing party will be prejudiced by reopening the hearing should be considered."[1] *Id.*

As explained in the Court's Memorandum Opinion and Order of July 20, 2017, Trooper Ramsey ran the license plate of the vehicle Defendants were driving and discovered that its owner, Angela

---

[1] "Because the Federal Rules of Criminal Procedure make no provision for a motion to reconsider," courts have had to look elsewhere for guidance on such motions. *United States v. Jones*, No. 06-20343-Ma/P, 2011 WL 5967230, at *1 (W.D. Tenn. Sept. 23, 2011) (internal quotations omitted). In addition to the *White* standard, some courts have evaluated motions to reconsider "under the same standards applicable to a civil motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e)." *Id.* Others have relied on their "inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *United States v. Norris*, Civ. A. No. , 2012 WL 4960084, at *5 (W.D. Ky. Oct. 16, 2012) (quoting *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008)). In both instances, a motion to alter amend may be granted if there is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005). Of course, these considerations dovetail with those identified by the United States Court of Appeals for the Sixth Circuit in *White.* Thus, the result is the same, regardless of which precise standard the Court applies.

Burdine, was subject to an active arrest warrant. In such circumstances, an officer is entitled to presume that the registered owner of a vehicle is one of its occupants and initiate a traffic stop on that basis, unless he is aware of facts that make such a presumption unreasonable. *See United States v. Chartier*, 772 F.3d 539, 543 (8th Cir. 2014); *United States v. McBrown*, 149 F.3d 1176, 1998 WL 413981, at *10 (5th Cir. 1998); *United States v. Montalvo-Rangel*, 2010 WL 1417745, at *3 (W.D. Tex. Apr. 5, 2010) (quoting *People v. Khoshaba*, 2006 WL 932408, at *2 (Mich. App. 2006)); *State v. Howard*, 766 N.E.2d 179, 183 (Ct. App. Ohio 2001). Defendants insist that Trooper Ramsey was unreasonable in making such an assumption because he believed Angela Burdine was a female and could see that the three occupants of the vehicle were all male.

In support of this proposition, Defendants point to the following testimony:

> Q: Mr. Pyles was in the passenger seat in the back?
> A: That's correct.
> Q: And you saw a passenger in the back?
> A: Yes.
> Q: Mr. Pyles' appearance was fairly close to his appearance today?
> A: Yes.
> Q: And he does not have long hair as some women have, correct?
> A: No.

> Q: He has short hair that's characteristic of a man's hairstyle most typically, correct?
>
> A: Sure.
>
> Q: You've determined that the registrant of the car was Angela Burdine?
>
> A: That's correct.
>
> Q: You recognized Angela—or believed Angela Burdine was a woman, correct?
>
> A: Yes.
>
> Q: And you hadn't seen any women—didn't appear to you that there was a woman in the car, right?
>
> A: That's right.
>
> …
>
> Q: But the information available to you at the time that the car stopped along the interstate was there's three males in there, right?
>
> A: Yes.
>
> Q: And your resolution is, well, maybe I'll stop 'em and look in there and see if Angela Burdine's in there, right?
>
> A: That's right.

[DE 37 at 19-22].

However, Trooper Ramsey further testified that he was able to identify the driver and front passenger of the vehicle as males when they passed him, but he did not recall making an assessment of the rear passenger's gender. [*Id.* at 19, 21, 28-29, 31, 34]. He admitted that some of the passenger's characteristics were consistent with a male, but insisted that it was hard to discern the individual's gender. [*Id.*]. He also indicated that, in his

4

experience, the presence of three men in the car did not necessarily rule out the possibility that Angela Burdine was hiding in it:

> Q: So after you made contact, were you able to confirm that nobody else was in the vehicle other than the three men?
>
> A: That's right, after I made contact with them.
>
> Q: But at the time of the stop, you didn't know who else may have been in there?
>
> A: Right.
>
> Q: Had you ever stopped the vehicle and been surprised to find that there were more occupants in the vehicle than you think initially when you make a stop?
>
> A: Yes, I have.
>
> Q: How often do you think that occurs?
>
> A: Maybe once every other month or something.
>
> Q: So fairly frequently you think there may be only a couple of people and find out there were more?
>
> A: Right.

[*Id.* at 37-38].

Because Trooper Ramsey could not definitively determine the gender of the third occupant or discern whether other individuals were present in the car, he did not have facts at his disposal to dispel the presumption that the registered owner was present in the car. *See United States v. Chartier*, 772 F.3d 539, 543 (8th Cir. 2014); *United States v. McBrown*, 149 F.3d 1176, 1998 WL 413981, at *10 (5th Cir. 1998); *United States v. Montalvo-Rangel*,

2010 WL 1417745, at *3 (W.D. Tex. Apr. 5, 2010) (quoting *People v. Khoshaba*, 2006 WL 932408, at *2 (Mich. App. 2006)); *State v. Howard*, 766 N.E.2d 179, 183 (Ct. App. Ohio 2001). The Court stands by its prior finding that the traffic stop was supported by reasonable suspicion. Accordingly,

**IT IS ORDERED** that Defendants' Motion to Alter or Amend [DE 38] is hereby **DENIED**.

This the 3rd day of August, 2017.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge